# In the United States Court of Federal Claims

No. 13-144C
(Originally Filed: May 9, 2013)
(Reissued: May 29, 2013)[1]

* * * * * * * * * * * * * * * * * * * *

CHAMELEON INTEGRATED
SERVICES, INC.,

        *Plaintiff*,

v.

UNITED STATES,

        *Defendant*,

CSSS.net,

        *Intervenor*.

Bid protest; Federal Acquisition Streamlining Act; task order contract; STARS II GWAC.

* * * * * * * * * * * * * * * * * * * *

    *Robert J. Symon*, Washington, DC, for plaintiff.

    *Austin Fulk*, United States Department of Justice, with whom were *Steven J. Gillingham*, Assistant Director, *Jeanne E. Davidson*, Director, and *Stuart F. Delery*, Assistant Attorney General, Washington, DC, for defendant.

    *Pamela J. Mazza*, Washington, DC, for intervenor.

---

[1] The court issued this opinion under seal on May 9, 2013, requesting proposed redactions by May 24, 2013. Proposed redactions were only received from plaintiff. Plaintiff's redactions are indicated by brackets.

OPINION

BRUGGINK, *Judge*.

This is a post-award bid protest. It involves a challenge by plaintiff, Chameleon Integrated Services, Inc. ("Chameleon"), to the award by the United States Department of Agriculture ("USDA") of a task order to intervenor, CSSS.net ("CSSS"), under a pre-existing government-wide acquisition contract ("GWAC"), STARS II.[2] Plaintiff alleges in its motion for judgment on the administrative record that the award to CSSS was unreasonable, among other reasons, because CSSS received an unfair advantage during the preparation of final offers.

The United States moves to dismiss the protest for lack of jurisdiction. It argues that the Federal Acquisition Streamlining Act ("FASA")[3] applies to task orders issued under STARS II and bars jurisdiction in this court. In the alternative, the United States moves for judgment on the administrative record. Intervenor also moves for judgment on the administrative record. The matter is fully briefed, and we held oral argument on April 30, 2013. For the reasons set out below, we grant the motion to dismiss and deny plaintiff's motion for judgment on the administrative record.

BACKGROUND[4]

STARS II is a GWAC administered by the General Services Administration. The contract defines itself as a "Multiple Award (MA), Indefinite-Delivery, Indefinite-Quantity (IDIQ) contract" to provide IT services. STARS II Contract (hereinafter "STARS II") § I.1.1.[5] Although the

---

[2] "STARS" refers to Streamlined Technology Application Resource for Services.

[3] Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, 108 Stat. 3243 (codified in scattered sections of 10 U.S.C. and 41 U.S.C.).

[4] The facts are drawn from the Administrative Record ("AR") and are undisputed.

[5] *See* "8(a) STARS II contract," GSA.gov (April 15, 2013), (continued...)

parties disagree about the precise origins and nature of GWAC contracts, we think it is undisputed that a critical part of their parentage, as the contract itself indicates, is "Section 5112(e) of the Clinger-Cohen Act,[6] 40 U.S.C. 11302(e)." STARS II § I.2.1. This citation refers to chapter 113 of title 40 of the United States Code, "Responsibility for Acquisitions of Information Technology." 40 U.S.C. § 11301 (2006). Section 11302(e) of title 40 instructs the Director of the Office of Management and Budget to "designate the head of one or more executive agencies, as the Director considers appropriate, as executive agent for Government-wide acquisitions of information technology." 40 U.S.C. § 11302(e). The Director has chosen GSA as one of the executive agents for IT procurements. STARS II § I.2.1.[7] The contract notes that "this designation includes GSA's role and responsibility to award and administer the Basic Contract." STARS II § I.2.2.

Further, "STARS II is established under the authority of the Small Business Act," *id.* § I.2.1. *See* 15 U.S.C. § 637(a) (2006). STARS II is thus exclusive to "Small Business Administration (SBA) certified 8(a) prime contractors with competitive prices." STARS II Contract § I.1.1. There are over 500 companies currently holding a STARS II contract with GSA.[8]

The master contract also cites several provisions of FASA's implementing regulations: Federal Acquisition Regulation ("FAR")[9] Subpart

---

[5](...continued)
http://www.gsa.gov/portal/content/208261.

[6] *See* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 5112(e), 110 Stat. 186, 680-81 (1996) (codified as amended at 40 U.S.C. § 11301-11331 (2006)).

[7] There are other GWACs to which GSA and other agencies have been assigned the role of executive agent. John Cibinic, Jr., Ralph C. Nash, Jr., & Christopher R. Yukins, *Formation of Government Contracts* 1192 (4th ed. 2011).

[8] *See* "List of 8(a) STARS II Contract Holders," GSA.gov (April 15, 2013), http://www.gsa.gov/portal/content/208261.

[9] All references to FAR are to the Federal Acquisition Regulation and are
(continued...)

16.5, "Indefinite-Delivery Contracts." Section III of the master contract, "Contract Administration," for example, states that "[p]ursuant to FAR 16.504(a)(4)(vi), only authorized users may place Orders under the Basic Contract." STARS II § III.2.1. The contract also cites FAR Subpart 16.5 as controlling protests of orders made under STARS II. Protests are not allowed for orders valued less than $10,000,000, unless "the order increases the scope, period of performance, or maximum value of the Contract consistent with FAR 16.505.(a)(9)."[10] *Id.* § III.10.1. STARS II further refers to a "designated Ombudsman" who is to receive disputes "[i]n accordance with FAR 16.5." *Id.* § III.11.1.[11]

Both plaintiff and intervenor contracted with GSA before the solicitation in this case to be eligible for awards under the STARS II contract. The solicitation process began on December 6, 2011, when USDA issued a sources sought notice on the GSA eBuy website. AR 493, 3919. The notice stated that "USDA is soliciting firms to provide computer operations support services under the GSA 8(a) STARS II [GWAC]." AR 493. USDA attached a draft statement of work to the notice and asked contractors to opt-in if they wished to participate. *See id.* One hundred and seven contractors opted-in by December 20, 2011. AR 3919. USDA then issued Solicitation No. AG-3142-S-12-0009 on January 19, 2012.

The Request for Quotations ("RFQ") reflected that USDA is seeking various IT services for the National Information Technology Center, including help with hardware, security, alerts, and other matters. AR 123-25. The award included a base task order from which other orders may issue. AR 121. The RFQ provided details on what services are required and explained that offerors were to be evaluated based on their ability to satisfy these requirements. Quotations were to consist of three volumes: a technical proposal, a past performance proposal, and a price/business proposal. AR 203.

---

[9](...continued)
codified, unless otherwise noted, as of October 1, 2012, at Title 48 of the Code of Federal Regulations.

[10] The current provision appears at 48 C.F.R. § 16.505(a)(10) (2012).

[11] *See* 48 C.F.R. § 16.505(b)(6).

Technical proposals were to be composed of three parts: a staffing plan, a corporate security plan, and a transition plan. AR 205. Past performance proposals had to provide general information about the offeror, including a brief history of the company. AR 207. The final element of the quotation, the price/business proposal, contained the offeror's pricing information. AR 208. Each offeror was to supply a price schedule that "use[s] rates from the offeror's current GSA STARS II (GWAC) award." *Id.*

With respect to the technical proposal, the USDA evaluation assigned one of five possible ratings: outstanding, good, acceptable, marginal, and unacceptable. AR 211-12. This overall rating derived from separate ratings of subparts within the technical proposal. The staffing plan, corporate security plan, and transition plan each were rated either outstanding, good, acceptable, marginal, or unacceptable. *See* AR 212. Past performance proposals were assigned an overall rating of either substantial confidence, satisfactory confidence, limited confidence, or unknown confidence. AR 213. Price proposals were not separately rated but were reviewed "for completeness, reasonableness, and price realism." AR 215.

In accordance with those ratings, USDA was to make the award based on the quotation that "represents the best overall value to the government." AR 210. The RFQ also stated the following concerning price: "Although price/cost is of less importance than the technical factors, taken as a whole, it is a factor and must not be ignored." *Id.*

The solicitation set February 23, 2012, as the due date for proposals. Thirty-six proposals were submitted. AR 3919-20. Separate teams evaluated each part of the proposals. AR 3122. On May 8, 2012, the Contracting Officer ("CO") met with the Source Selection Team to review the ratings. AR 3123. The Source Selection Team found that 33 of the 36 proposals could be eliminated. *See* AR 3123. Only Chameleon, CSSS, and another vendor remained. *Id.* After addressing certain proposal concerns with the three offerors, USDA accepted revised offers on May 21, 2012. *Id.*

USDA gave CSSS and Chameleon identical ratings as to technical proposals, including all sub-parts (outstanding) and past performance proposals (substantial confidence). AR 1861. CSSS's total evaluated price was $13,771,904. Chameleon's total evaluated price was [    ]. *Id.*

On June 30, 2012, USDA made an initial award to CSSS and sent a letter to Chameleon notifying it of the award to CSSS. AR 3124. USDA debriefed Chameleon on July 11, 2012. AR 2489. Chameleon then filed a protest with the Government Accountability Office ("GAO"), alleging that it was unreasonable to award the task order to CSSS because Chameleon received the same technical and past performance proposal ratings but offered nearly a [   ] price advantage. AR 2638.

In response to the protest, USDA issued a stop work order on July 16, 2013, AR 3124, and on August 7, 2012, stated its intent to take corrective action. AR 3591. GAO dismissed the protest as moot on August 10, 2012. AR 3124. The agency then sent notices to the three vendors on October 2, 2012, setting out the procedures for the corrective action and the issues the offerors should address. *See id.* The bidders were to further explain their staffing plans. Specifically, CSSS and Chameleon[12] would propose how to offer service credit for incumbent employees. They were also asked to revise their transition plans to comply with certain requirements under the RFQ. AR 3659, 3654-55. USDA made no comment about work already done by CSSS in the weeks between the June 30 initial award and July 16 stop work order. AR 3659.

USDA also conducted separate telephone discussions with CSSS and Chameleon. AR 3125. On October 3, 2012, the agency spoke with CSSS. CSSS took notes at the meeting that indicate the conversation started at 11:00 a.m. AR 3661. CSSS asked the CO if the vendor that protested at GAO (whose identity was unknown to CSSS) had been furnished with CSSS's price during the debriefing on the first award. *Id.* The CO responded, "Yes." *Id.* CSSS then asked if vendors would be permitted to reduce prices in the next round of offers. USDA affirmed that price reductions were allowed. According to notes taken during the discussions, a representative of CSSS remarked, "[o]ur concern is that they know our price." *Id.* The agency responded, "[o]n the last requirement, you were not the lowest price, or second lowest price." *Id.* It is undisputed that there were only three offerors at that point.

Chameleon representatives spoke with the agency that same day. AR 3656. According to notes written during that telephonic conference, a

---

[12] We have omitted details about the third offeror as irrelevant.

Chameleon official asked, "[c]an you tell me if Chameleon pricing was disclosed?" *Id.* The CO answered "no, it was not." *Id.*

Revised bids were due by October 5, 2012. AR 3124. All three vendors submitted timely bids, AR 3125, and USDA then reevaluated the proposals. AR 3741. The ratings of both Chameleon and CSSS held constant on the technical proposal: outstanding for the overall rating and sub-ratings. AR 3746, 3750. No comment was made about any transition activities performed by CSSS between the initial award date and the stop work order. AR 3750-53. Both companies received a rating of substantial confidence for their past performance rating. AR 3845.

Prices changed significantly, however. Chameleon raised its total evaluated price to [    ]. *Id.* CSSS cut its price to $12,845,843. *Id.* In once again recommending selection of CSSS, the Source Selection Authority found that the company's proposal "was the lowest priced proposal of the most highly rated offerors and is the most advantageous to the Government." AR 3842.

USDA awarded the task order to CSSS on October 31, 2012, and notified each offeror. AR 3125. Chameleon filed a second protest at GAO on November 9, 2012. AR 3127. It alleged, *inter alia*, that the award to CSSS was unreasonable because USDA informed CSSS that two other vendors had submitted lower prices, while at the same time telling Chameleon that its pricing had not been disclosed. *See* AR 4103-04.

On February 15, 2013, GAO denied Chameleon's protest. AR 4100. GAO found that it was proper for USDA to tell CSSS where it ranked in relation to other vendors because, at that point, Chameleon had CSSS's actual price. The USDA therefore "merely leveled the playing field." AR 4104 (citing *Ocean Servs., LLC*, B-292511.2, 2003 CPD ¶ 206 at 5 (Comp. Gen. Nov. 6, 2003). USDA also "did not mislead Chameleon," because "Chameleon only asked whether its specific price had been disclosed to the awardee." *Id.*

After GAO lifted the stay on performance of work, the CO held a meeting with CSSS on February 20, 2013, to discuss transition matters. AR 1873. The notes from that meeting indicate that the CO made comments about the "last transition," AR 1862, i.e., the brief period of performance between the original award to CSSS and the first stay of the task order. According to

the notes, the transition "[     ]." *Id.* Other notes taken from that meeting indicate the following comments made, presumably, by the CO: "Want to discuss Transition[,] CSSS intent [and] how to proceed . . . [     ]." AR 1874. The notes also indicate comments about an incumbent list. One note states, "Get Incumb[ent] List to CSSS." *Id.* Another states, "we don't have a list." AR 1862.

On February 26, 2013, plaintiff filed its complaint here. Plaintiff has two arguments. The first concerns the relative positions of the bidders with respect to their knowledge about each others' prices. Plaintiff contends that, although Chameleon knew CSSS's exact initial price, the agency's statement that it had not given the same information to CSSS about Chameleon's bid confused plaintiff in that it was left with the impression that CSSS knew nothing about Chameleon's price, whereas, in fact, the intervenor knew that it was the highest of three bidders. Chameleon contends that the agency had a duty to tell Chameleon about the level of CSSS's knowledge even if plaintiff did not ask the agency for that information. The failure to notify Chameleon of CSSS's knowledge constitutes unfair treatment, plaintiff asserts, because it put Chameleon at a tactical disadvantage.

Plaintiff also argues that USDA, in the final evaluation of technical proposals, should have taken account of CSSS's initial transition experience between June 2012 and July 2012. Plaintiff construes the notes of the February 10, 2013 meeting between CSSS and the agency as reflecting [     ]. According to plaintiff, it was therefore irrational to not comment on that transition during the final evaluations.

DISCUSSION

Defendant moves to dismiss the complaint for lack of jurisdiction. It asserts that FASA exempts this task order award from protest. Defendant is correct that FASA generally is an impediment to the assertion of jurisdiction by this court over the protest of a task order. 41 U.S.C. §§ 4106(a), 4106(f) (Supp. V 2011); *see, e.g.*, *A & D Fire Protection Inc. v. United States*, 72 Fed. Cl. 126, 133-34 (2006). In this case USDA issued an order under a pre-existing task order contract, which appears to have been issued subject to FASA. *See* 41 U.S.C. § 4103(a) (defining task order contracts); STARS II § I.1.1 (stating that it is an indefinite delivery/indefinite quantity contract).

Plaintiff asserts, however, that appearances can be deceiving and that the STARS II GWAC under which the award was issued is not a task order contract subject to FASA. It argues that FASA applies only to "traditional task and delivery order contracts." Pl.'s Reply 3.[13] A traditional task and delivery order contract, according to plaintiff, involves a small number of contractors who then bid on subsequent orders. Plaintiff cites for support the decisions in *Wildflower International, Ltd. v. United States*, 105 Fed. Cl. 362 (2012), and *Solute Consulting v. United States*, 103 Fed. Cl. 783 (2012). These decisions, according to plaintiff, "involve[d] . . . one or a small handful of contractors." Pl.'s Reply 2. Plaintiff contends that such a scenario is fundamentally different from a situation, such as the STARS II GWAC here, in which hundreds of contractors obtain access to a master contract. Plaintiff points out that STARS II is issued to "over 580 companies," *id*. at 3, and further states it is "open to any 8(a) company." *Id.* at 2.

Plaintiff contends that such mass contracting at the master contract level is similar to the GSA Federal Supply Schedule ("FSS") program, which is not subject to the protest restrictions attendant to task order contracts authorized by FASA. *See, e.g.*, *Data Mgmt. Servs. Joint Venture v. United States*, 78 Fed. Cl. 366, 371 n.4 (2007). It urges the court not to be bound by what plaintiff believes are the agency's gratuitous references to FAR Subpart 16.5 in the STARS II GWAC. Instead, it argues that we should ignore the agency's attempt to characterize what it did as pursuant to a FASA contract vehicle and instead deem it to be some other, unidentified contracting device, but one which is subject to the court's bid protest jurisdiction. Plaintiff does not, we note, contend that STARS II is an FSS contract. It would be difficult to do so, as the services were not sought from that program.

There is no support in statute, regulation, or case law for plaintiff's attempt to bracket the reach of FASA.[14] The definition of task order contract

---

[13] "Pl.'s Reply" refers to Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Judgment on the Administrative Record and in Opposition to Defendant's Motion to Dismiss / Cross-Motion for Judgment on the Administrative Record.

[14] At oral argument, plaintiff raised for the first time the suggestion that, if GWACs had been statutorily authorized before FASA was adopted, rather than the reverse, that Congress surely would have excepted GWACs from the
(continued...)

in section 4103 of FASA does not limit these contracts to procurements involving a "small handful of contractors." *See* 41 U.S.C. § 4103(a) (defining task order contracts and containing no limits on the number of vendors). FAR Subpart 16.5 parrots this definition. *See* 48 C.F.R. § 16.501 (2012) ("Task order contract means a contract for services that does not procure or specify a firm quantity of services (other than a minimum or maximum quantity) and that provides for the issuance of orders for the performance of tasks during the period of the contract.").

GWACs, moreover, are specifically embraced within FAR Subpart 16.5, which sets out rules for task order contracts. *See* 48 C.F.R. § 16.505(a)(8) (addressing interagency contracts, including GWACs); *see also* 48 C.F.R. § 2.101 (defining a GWAC as a "task-order or delivery-order contract for information technology established by one agency for Governmentwide use"). The assumption that follows is that the entirety of FAR 16.505 applies to GWACs. *See* John Cibinic, Jr., Ralph C. Nash, Jr., & Christopher R. Yukins, *Formation of Government Contracts* 1195 (4th ed. 2011) (stating that FAR 16.505 applies to orders under GWACs).

Nor do the cases cited by plaintiff show that FASA limits itself to a certain type of task order contract. In *Solute Consulting*, the Navy awarded the order under a task order contract that had been awarded to a single entity. 103 Fed. Cl. 783, 784-85. Nothing in that case provides a basis for limiting FASA's application to only task order contracts with a limited number of awardees. In *Wildflower International*, the court discussed whether FASA applied to a task order in which four bids were submitted. 105 Fed. Cl. 362, 371-72. The case makes no reference to the size of the master contract, *see id.* at 367-68, and does not comment on whether that would matter.

Plaintiff cites *Idea International Inc. v. United States*, 74 Fed. Cl. 129 (2006), for the proposition that "FASA itself makes it clear that its task order protest limitation only applies to traditional task and delivery order contracts." Pl.'s Reply 3. The language "traditional task and delivery order contracts" does not appear in the long excerpt plaintiff quotes from that decision. The court merely notes that GSA Schedule contracts existed before FASA was adopted, 74 Fed. Cl. at 135, and were authorized pursuant to a completely

---

[14](...continued)
limitations on protest imposed by FASA. We need not speculate on what Congress might have done. We are limited to the statutes as written.

different regulatory program, *id.* at 135-36. It also notes that FASA specifically did not purport to affect GSA Schedule contracts. *Id.* at 135-36 (citing 10 U.S.C. § 2304a(g) (2000)).

Our prior precedent shows that FASA applies broadly. In *MED Trends, Inc. v. United States,* 102 Fed. Cl. 1, 2 (2011), this court analyzed the GSA "VETS GWAC." Although we found that the FASA protest bar did not apply because of a sunset provision,[15] we recognized: "There is no question that, had this protest been brought one month earlier, the court would not have been able to exercise jurisdiction." *Id.* at 4; *see also Enterprise Info. Servs, Inc.*, B-403028, 2010 WL 3554592 at *1 n.1 (Comp. Gen. Sept. 10, 2010) (exercising jurisdiction over the protest of an award under the predecessor to STARS II because characteristics of the order satisfied FASA requirements); *Global Computer Enters., Inc.*, B-310823, 2010 WL 314520 at *3-5 (Comp. Gen. Jan. 31, 2008) (addressing a protest to the change in scope of a task order issued under a GWAC and stating that FASA barred jurisdiction).

Plaintiff also argues that the fact that the STARS II GWAC is interagency in nature (with USDA as the customer and GSA as the executive agent) makes it look like the GSA FSS program. That is true, but immaterial. Plaintiff does not contend that the procurement here is subject to the FSS and offers no category other than FASA under which to treat the task order. Plaintiff fails to rebut the presumption that FASA applies to the STARS II contract. We therefore do not have jurisdiction.

Even if the court had jurisdiction, we would not find for plaintiff on the merits. In bid protests the court reviews agency action and may overturn an award if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a) (2012). Plaintiff must show that the award lacked a rational basis or that the award violated a regulation or procedure. *Axiom Res. Mgmt. Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

---

[15] *See* National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 843, 122 Stat. 3, 236-39 (2008) (codified at 41 U.S.C. § 4106(f) (Supp. IV 2010)). FASA's protest bar was restored by the National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 813, 125 Stat. 1298, 1491 (2011) (codified at 41 U.S.C. § 4106(f) (Supp. V 2011)). *See Wildflower Int'l*, 105 Fed. Cl. at 372-75 (discussing both acts).

Plaintiff argues that it was unreasonable for USDA to tell CSSS that its price was lower than two other offerors while failing to tell the other vendors that USDA had disclosed that information. The agency, of course, had already furnished Chameleon with CSSS's actual bid and attempted to level the playing field, as pointed out by GAO, by giving some comparable information to CSSS. Plaintiff asserts, however, that, at that point, CSSS had a tactical advantage over it, not because it had more information about plaintiff's initial price, but because plaintiff was under the false impression that CSSS knew nothing about the relative positions of the bidders' prices. Presumably, believing that CSSS was in total ignorance of Chameleon's own circumstances, Chameleon felt the liberty to raise its price substantially, given the initial difference in bids. What this means, of course, is that plaintiff had no reluctance to take advantage of what it must have thought was its own superior knowledge, namely, CSSS's actual price. According to plaintiff, USDA had an affirmative duty, not merely to answer the question put to it by plaintiff, but to go further and make certain plaintiff was not laboring under some unexpressed false assumption about the level of CSSS's knowledge.

We disagree. Because Chameleon knew CSSS's exact price, USDA initially tried to properly level the playing field. *See DGS Contract Serv., Inc. v. United States*, 43 Fed. Cl. 227, 238 (1999) (holding that an agency may correct "any competitive advantage obtained" by an offeror's obtaining more information than other vendors).[16] When Chameleon asked USDA whether its "pricing" had been disclosed, AR 3656, it was not irrational for the agency to assume that "no" was an accurate response. The CO certainly was not obligated to volunteer more than what was literally asked.

Plaintiff's second argument on the merits deals with the brief transition period after the initial award to CSSS and prior to the first GAO protest, June 2012 to July 2012. According to plaintiff, agency notes indicate that CSSS [ ]. The notes upon which plaintiff relies are the April 2013 transition meeting notes taken during a meeting between the CO and CSSS. Those notes state that CSSS "[ ]." AR 1862, and that "[ ]." AR 1874. At the time that USDA conducted the corrective action and last evaluation, plaintiff asserts,

---

[16] We note that *DGS Contract Service* applied FAR Subpart 15.5 and not FAR Subpart 16.5, which applies here. Notions of fundamental fairness apply to all procurements, however. *See* 48 C.F.R. § 1.602-2(b) (stating that a contracting officer must "[e]nsure that contractors receive impartial, fair, and equitable treatment").

12

USDA must have had the same information.  Plaintiff argues that USDA had a duty to apply this past performance information and downgrade CSSS's proposal.  Pl.'s Reply 9 (citing *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 781 (2011)).  Failure to take account of that information was irrational, according to plaintiff.

We disagree.  These notes are vague and oblique criticisms at best and certainly offer no clear evidence that CSSS was somehow not performing properly.  As defendant and intervenor point out, this initial performance period was very short and no doubt affected by the prompt filing of the GAO protest and its accompanying stop work order.  The comments give us no basis for concluding that the agency's final evaluation lacked a rational basis.

## CONCLUSION

We therefore grant defendant's motion to dismiss, deny plaintiff's motion for judgment on the administrative record and deny intervenor's cross-motion for judgment on the administrative record as moot.  The Clerk of Court is directed to dismiss the complaint with prejudice.  No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge
